MORTEN v. FIVE CANAL-BOATS.

*(District Court, D. New Jersey.   July 13, 1885.)*

1. COLLISION—NEGLIGENT NAVIGATION—BURDEN OF PROOF.
    In a suit to recover for damages caused by a collision resulting from careless and negligent navigation, the burden of proof is on the libelant.
2. SAME—CANAL-BOATS AND SLOOP—IMPROPER ANCHORAGE—FAULT—EVIDENCE.
    On examination of the evidence in this case, *held,* that the sloop was in fault in anchoring at the place where she did; that the evidence of negligence on the part of the canal-boats with which she collided was not sufficient to entitle her to recover; and that the libel should be dismissed.

Libel *in rem.*

*Hyland & Zabriskie,* for libelant.

*Frank L. Hall,* for respondent.

NIXON, J.   This suit is brought to recover damages arising from a collision between the fishing sloop Flash, of which the libelant is owner, and five canal-boats, the property of the Philadelphia & Reading Coal & Iron Company, of which corporation the claimants are receivers.

It appears that on the sixth of December, 1884, the Flash was bound up the North river, and, being overtaken by a storm, anchored off a coal-pier at Jersey City about sundown; that about the time of casting her anchor she was notified by the employes on the pier that she would be in the way of the boats coming for coal and water; that, in order to get out of the way, leaving the anchor where it was first cast, not far from the river end of the coal-pier, they began to pay out the cable. The wind was strong from the south-east, blowing the sloop into the slip between the coal-pier on the south and the dock of the New Jersey Central Railroad Company on the north, until she was floating within about 15 feet of the said dock, her cable stretching across the slip 80 fathoms or more to the anchor. The slip was less than 400 feet in width, bounded on the northern side by the wharf, or dock, of the said railroad company. This was 700 or 800 feet in length, at the lower end of which, next to the river, the five canal-boats were moored,—fastened together, with their bows to-

wards the river,—three of them (Nos. 71, 70, and 7) in front, and the remaining two (Nos. 6 and 31) in their rear. The libelant's sloop was held by her anchor and cable stretching diagonally across the slip, a short distance behind the last-named boats.

As the wind increased later in the evening, the canal-boats were exposed to the full force of the gale across the river, and found themselves in an unsafe and dangerous position. At about 9 o'clock P. M. they were unloosed from the dock, in order to go further into the slip, whither they were carried when unfastened by the force of the wind. In this movement they in some way got entangled with the cable of the sloop, and were brought into collision with her, doing her considerable injury.

The libelant claims that the accident was caused solely by the negligence, mismanagement, and bad navigation of the canal-boats. The respondents reply that the sloop was lying where she had no business to be, and that she was warned to get out of the way before any attempt was made to move the boats.

The suit is for damages for careless and negligent navigation, and the burden of proof is upon the libelant. He must show affirmatively carelessness and negligence in the management of the boats. The testimony is so contradictory that I am afraid all the witnesses have not been careful to speak the truth. There were two persons on the sloop,—the master, who appears to have been below in the cabin until about the time of the first collision, and a seaman named Johnson, who was on deck as watchman. They both swear that they had no information or warning that the canal-boats intended changing their position by dropping from their moorings into the slip, until they were adrift and in contact with the sloop. On the other hand, three of the captains of the canal-boats—Hopkins, of No. 71; Dautrich, of No. 7; and O'Connell, of No. 6—agree in the statement that some time before the canal-boats were moved—one of the witnesses states half an hour, and another three-quarters of an hour—notice was given that they were about to move into the slip, and that the sloop must be removed out of their track. They are quite sure that the notice was heard and understood by those on board the sloop, as a reply came back from some one, saying, "All right."

I think the weight of the evidence is that timely notice was given, and that the respondents are not liable for any damage which arose to the libelant by continuing his boat in such an anchorage. But, independent of the evidence on this point, the libelant has hardly presented a case which entitles him to damages for injury to his sloop. She was lying at anchor at an improper place and in an improper manner, and the law is well settled that she must take the consequences resulting therefrom. Casting his anchor near the south side of the entrance to the slip, he paid out 80 fathoms of cable, until it almost reached the wharf upon the northern side,—the wind carrying the vessel diagonally across the slip. He was lying at anchor within

a few feet of shore, although the uncontradicted proof is that the rules and customs of the harbor of New York and Jersey City forbid vessels from anchoring within 200 feet of shore. There was no stress of weather that justified him in mooring the sloop so near the dock that canal-boats, two or three abreast, could not have room to pass along the wharf without coming into contact with his cable, or in collision with his vessel.

The libel must be dismissed.